No. 99-496

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 97

STATE OF MONTANA,

Plaintiff/Respondent,

v.

RAYMOND LOPEZ,

Defendant/Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Barbara E. Bell, Bell & Marra, Pllc, Great Falls, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer M. Anders,

Assistant Attorney General, Helena, Montana

Submitted on Briefs: December 29, 2000
Decided: June 7, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Raymond Lopez was charged by Information filed in the District Court for the Eighth Judicial District in Cascade County with Aggravated Assault in violation of §45-5-202(1), MCA (1997); Felony Assault, in violation of §45-5-202(2)(a), MCA (1997); Partner or Family Member Assault, in violation of §45-5-206(1)(a), MCA; Kidnaping, in violation of §45-5-302, MCA (1997); three counts of Criminal Mischief, in violation of §45-6-101(1)(a), MCA (1997); two counts of Aggravated Burglary, in violation of §45-6-204(2)(a), MCA (1997); and two counts of Burglary, in violation of §45-6-204, MCA (1997). Prior to trial, Lopez filed a Motion to Strike the Jury. The District Court denied that motion. Before the case was submitted to the jury, the District Court dismissed the aggravated assault charge and one count of aggravated burglary because of insufficient evidence. Lopez was found guilty of all other charges except for one count of burglary. For the acts which served as the basis of that charge, he was found guilty of criminal trespass. On appeal, Lopez contends that the jury was improperly summoned and that both counts of aggravated burglary and the charge of felony assault against John Hendricks should have been dismissed for lack of evidence. We reverse the District Court and remand for a new trial.

¶2 Lopez asserts two issues on appeal:

¶3 (1) Did the District Court err when the Court denied the defendant's Motion to Strike the Jury?

¶4 (2) Was there sufficient evidence to support convictions for felony assault and aggravated burglary?

## FACTUAL BACKGROUND

¶5 Rita Henderson is the common law wife of Raymond Lopez. They have two children. On December 9, 1997, Rita and the children were staying at the home of her sister, Judy Carrier. That morning, Lopez went to Judy's home, looking for Rita. He became enraged

when neither Rita nor Judy would let him in. He started yelling and screaming for Rita. Finally, he broke a kitchen window which enabled him to unlock the kitchen door. When Rita realized that he was coming in, she ran to the bathroom. Judy called the police and reported that Lopez had broken into her house. Lopez ran to and apparently entered the bathroom. According to Judy, she heard Lopez hitting Rita. Judy heard a thud. Then, Lopez ran out of the bathroom and left the house. Rita came out of the bathroom and told Judy that Lopez had punched her in the face, and caused her to fall and hit her head on the bathtub.

¶6 Officer William Ramsey responded to Judy's call. Rita explained to Officer Ramsey that Lopez broke into the house and followed her into the bathroom where he started to hit her. Later that day, Rita went to the hospital because the pain in her neck was so severe. The doctor who examined her told her that she had a fractured neck, and would have to wear a neck brace.

¶7 Lopez returned to the house at around 10 o'clock that morning after the police had left. He told Judy that he wanted to talk to Rita but Judy refused to see him. Judy threatened to call the police but Lopez told her that he would cut the phone cord if she attempted to do so. She left the house and went to a neighbor's home to call the police. Officer John Sewell responded to her call. He watched Lopez enter the house, in the same manner in which he had gained access earlier. Officer Sewell could hear Rita and Lopez arguing. He watched as Lopez dragged Rita outside the house. He could hear Rita tell Lopez to stop. Although it was the middle of December, he saw that she was not wearing shoes or a coat. Officer Sewell approached Lopez and told him to drop to the ground. Lopez refused but released Rita. Another policeman, Officer Ramsey arrived on the scene. The two officers cornered Lopez and forced him to surrender.

¶8 The day before, on December 8, 1997, Bruce Jorgenson was watching television with his girlfriend when the front door to his apartment was forced open. A man holding a knife asked where Rita was and then abruptly left when he realized that Rita was not in the apartment.

¶9 A couple minutes later, in the same building, the front door to John Hendricks' apartment was also forced open. As Hendricks jumped towards the door, the man stabbed Hendricks in the chest and yelled, "Where's Rita?" Officer Paul Smith was dispatched to the apartment building, and took statements from both men.

¶10 Lopez was charged by Information on December 31, 1997 with aggravated assault, felony assault, family member or partner assault, kidnaping, three counts of criminal mischief, two counts of aggravated burglary and two counts of burglary.

¶11 The Clerk summoned the jury by telephone. Lopez made a motion to the Court to Strike the Jury. The Court denied the motion and proceeded with the trial. The Court dismissed the aggravated assault charge and one count of aggravated burglary because there was insufficient evidence. The jury then, found Lopez guilty of all counts, except for one count of burglary. For the acts which formed the basis for that charge, he was convicted of criminal trespass.

## DISCUSSION

## ISSUE ONE

¶12 Did the District Court err when the Court denied the defendant's Motion to Strike the Jury?

¶13 The District Court's decision to deny Lopez's motion to strike is based on its conclusion of law. We review conclusions of law to determine whether they are correct. *State v. Anderson* (1997), 282 Mont. 41, 43, 934 P.2d 1037, 1038.

¶14 Lopez asserts that the District Court erred when it denied his motion to strike the jury because the manner in which the jury was summoned violated §3-15-505, MCA (1997). This statute provides that:

> [t]he clerk shall serve notice by mail on the persons drawn as jurors and require response thereto by mail as to their qualifications to serve as trial jurors. He may attach to the notice a jury questionnaire and a form for an affidavit claiming an excuse as provided for in 3-15-313. If a person fails to respond to the notice, the clerk shall certify the failure to the sheriff, who shall then serve notice personally on such person and require a response to the notice.

Section 3-15-505, MCA (1997). However, in this case, the jurors were notified by telephone, rather than by mail or in person.

¶15 The State concedes that a reversal is warranted in light of our decision in *State v. LeMere,* 2000 MT 45, 298 Mont. 358, 2 P.3d. 204. The facts of each case are similar. The

jurors in both cases were notified by telephone, contrary to the statutory requirements.

¶16 We concluded in *LeMere* that "telephone summoning not only frustrates the random nature of the selection process, but also undermines the principle of granting juror excuses only on the basis of objective criteria." *LeMere*, ¶73. The plain language of §3-15-505 does not permit the clerk to utilize the telephone in summoning a new panel of trial jurors. "The fundamental purpose of the jury selection statutes is to provide random selection of jurors from the entire panel or array, . . .thus securing a fair and impartial jury." ¶70.

¶17 Therefore, we reverse and remand for a new trial, based on our decision in *LeMere.*

## ISSUE TWO

¶18 Was there sufficient evidence to support conviction for felony assault and aggravated burglary?

¶19 The District Court denied Lopez's motion to dismiss after the close of the State's case. The decision to grant or deny a motion to dismiss lies within the sound discretion of the trial judge and will only be disturbed on appeal when the trial court abused its discretion. *State v. White Water* (1981), 194 Mont. 85, 87, 634 P.3d 636, 637.

¶20 Lopez asserts that the District Court erred when it allowed three charges to go the jury: one count of felony assault and two counts of aggravated burglary. Lopez asserts that the State did not meet its burden of proving each of these three charges, and therefore, according to Lopez, he should not be retried any of these charges.

¶21 Lopez moved the court for a directed verdict on both counts of aggravated burglary and the felony assault charge. A district court should grant a directed verdict only when there is no evidence to support a guilty verdict. *State v. Campbell* (1996), 278 Mont. 236, 246, 924 P.2d 1304, 1310-1311. Although the Court declined to dismiss the felony assault charge and one count of aggravated burglary based on Lopez's alleged entry to John Hendricks's apartment, the Court did dismiss the aggravated burglary count based on alleged entry of Jorgenson's apartment. Therefore, remanding the dismissed charge for retrial would violate Lopez's constitutional protection against double jeopardy, s*ee State v. Lundblade* (1986), 221 Mont. 185, 187, 717 P.2d 575, 577, and we only consider whether the District Court abused its discretion when it submitted the felony assault charge and aggravated burglary charge of Henderson's apartment to the jury.

¶22 First, Lopez claims that the State did not meet its burden of proving count two, felony assault, against John Hendricks, in violation of §45-5-202(1), MCA (1997), which provides that "a person commits the offense of felony assault if the person purposely or knowingly causes . . .bodily injury to another with a weapon."

¶23 Hendricks testified that a man broke down the front door to his apartment and stabbed him in the chest. Although Hendricks identified Lopez as his assailant in previous statements to the police, Hendricks testified during trial that Lopez was not his assailant. However, the State impeached this testimony by offering his prior inconsistent statements. It also demonstrated why Hendricks might refuse to identify Lopez as his assailant during trial. Prior to the trial, Hendricks cooperated with the police and identified Lopez as his assailant. However, before Lopez's trial occurred, Hendricks was, himself, imprisoned on unrelated charges. The prosecution suggested that Hendricks' motive for retracting his earlier statements was the fear of any possible consequences that might occur in prison if he was labeled a "snitch."

¶24 The State also offered evidence that Lopez believed that Rita was in one of the apartments that he broke into that night and suggested that Lopez broke into both Jorgenson and Hendricks' apartments because he believed Rita was having an affair. When the police investigated the burglaries, both Hendricks and Jorgenson told the police that their assailant stated that he was looking for Rita. Both gave similar descriptions of their assailant. Hendricks told the police that he believed his assailant was blonde but changed his mind about the hair color the following day. At trial, the defense tried to discredit his testimony and identification of Lopez because Lopez has brown hair. However, Hendricks' inconsistent identifications were simply additional facts for the jury to consider.

¶25 The State also offered several admissions from Lopez. When the police initially questioned Lopez, he denied entering Hendricks' apartment. He later retracted this statement and told the police that he did break down Hendricks' front door but denied stabbing him. He changed his story once again and told the police that he punched Hendricks but only after Hendricks came after him with a large pipe. These statements contradict Hendricks' testimony that his assailant came into his house, stabbed him and left. Hendricks has never made any statement, either before or during trial that suggested that he, himself, did anything to provoke the attack.

¶26 The jury was shown pictures of Hendricks' stab wound and also heard testimony that Hendricks' picked Lopez out of a police photo line-up. The weight of the evidence and the

credibility of the witnesses are exclusively within the province of the trier of fact. When the evidence conflicts, the trier of fact determines which to believe. *State v. Bower* (1992), 254 Mont. 1, 8, 883 P.2d 1106, 1111. We conclude that the State offered sufficient evidence to prove felony assault of Hendricks. Therefore, we conclude that that the District Court did not err when it refused to dismiss that charge by directed verdict.

¶27 Lopez also contends that there was insufficient evidence to support the charges for aggravated burglary based on his entry of John Hendricks' apartment. Pursuant to §45-6-204, a person commits aggravated burglary:

> if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein and . . . in effecting entry or in the course of committing the offense or in immediate flight thereafter, he or another participant in the offense is armed with explosives or a weapon. . . .

Section 45-6-204(2)(a). The prosecution offered testimony that Lopez broke down the front door of Hendricks apartment while in possession of a weapon and demanded to know where Rita was. He stabbed Hendricks and fled. Hendricks testified that he had not left his apartment the night he was stabbed. Therefore, his assailant must have entered the apartment. As we held previously, the State provided substantial evidence that Lopez feloniously assaulted Hendricks. Whether Lopez entered the apartment for that purpose was an issue properly submitted to the jury. Therefore, we conclude that the District Court did not abuse its discretion when it refused to dismiss the charge that Lopez committed aggravated burglary of Hendricks' apartment.

¶28 Accordingly, we remand this case for a new trial on all the charges, with the exception of Count 1, aggravated assault, Count 6, aggravated burglary and Count 11, burglary.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER