No. 01-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 44N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CYNTHIA HENDERSON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John K. Kurtz; Kurtz Law Office, Helena, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Ilka Becker,
Assistant Attorney General, Helena, Montana

Valerie Wilson, Jefferson County Attorney, Boulder,
Montana

Submitted on Briefs: January 17, 2002

Decided: March 12, 2002

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1　Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2　Cynthia Henderson appeals from the Findings, Verdict, Judgment and Sentence entered by the Fifth Judicial District Court, Jefferson County, finding her guilty of three counts of misdemeanor assault.  We affirm.

¶3　Henderson presents the following issues for review:

¶4　1.  Did the State fail to prove Henderson's guilt beyond a reasonable doubt, thereby requiring her acquittal on the three misdemeanor assault charges?

¶5　2.  Did the District Court err in basing Henderson's conviction solely on unreliable prior inconsistent statements by the children?

## BACKGROUND

¶6　Melissa, Kyler, Kelly, and Mista Ward are the children of Rhonda and Lynn Ward.  Rhonda and Lynn separated in the fall of 1998, and Rhonda subsequently moved out of the family home and into Henderson's residence.  In January of 1999, Kelly and Mista began living with their mother in Henderson's home.  In March of 1999, after Lynn overdosed on drugs and was hospitalized, Kyler also moved into the Henderson residence with his mother and sisters.  Kelly subsequently moved back to the family home with Lynn, but regularly visited her mother and siblings at Henderson's home.

¶7　In January of 2000, after Kyler told Lynn that Henderson had abused him and his sisters, Lynn brought Kyler into the Jefferson County Sheriff's office to swear out a complaint against Henderson.  Kyler told Deputy Sheriff Robert Gleich that Henderson threatened and beat the Ward children on numerous occasions while they were living in her home.  Specifically, Kyler stated that 1) between June and December of 1999, he intervened in a fight between Henderson and Rhonda during which Henderson pushed him on a couch and pulled his hair; 2) in July of 1999, Henderson spit on his sister Kelly and called her a vulgar name; and 3) between June and December of 1999, Henderson threatened Kyler, Mista and Kelly with a board.  Kyler made several other serious allegations.  Kelly and Mista also

gave statements to Deputy Sheriff Craig Doolittle alleging Henderson had spit on Kelly, called her a vulgar name and threatened her with a board. Henderson subsequently was arrested.

¶8    The State of Montana charged Henderson with felony assault with a weapon, two counts of felony assault, felony assault on a minor, and four counts of misdemeanor assault. Henderson pled not guilty.

¶9    Prior to trial, Henderson's attorney interviewed Kyler with Rhonda's consent and cooperation. Kyler reiterated some of the statements he had made to law enforcement. Several of Kyler's statements, however, were inconsistent with his earlier statements.

¶10    In light of Kyler's later statements, the State subsequently amended the information against Henderson to five counts: 1) felony criminal endangerment based on an alleged firing of a handgun near two of the children; 2) misdemeanor endangering the welfare of children based on allegations Henderson threatened to slit her own throat and cut her wrists in front of the children; and 3) three counts of misdemeanor assault, based on allegations she knocked Kyler down and pulled his hair, spit on Kelly and threatened to strike Kelly with a board. The District Court entered its Findings, Verdict, Judgment and Sentence on November 20, 2000. The District Court acquitted Henderson of felony criminal endangerment and misdemeanor endangering the welfare of children, but convicted her of the three misdemeanor assault offenses. Henderson appeals.

## STANDARD OF REVIEW

¶11    We review the sufficiency of evidence presented at trial to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Duffy, 2000 MT 186, ¶ 50, 300 Mont. 381, ¶ 50, 6 P.3d 453, ¶ 50 (citation omitted).

## DISCUSSION

¶12    1. Did the State fail to prove Henderson's guilt beyond a reasonable doubt, thereby requiring her acquittal on the three misdemeanor assault charges?

¶13    Henderson argues she presented substantial evidence at trial creating reasonable doubt that she committed the misdemeanor assaults. In this regard, she advances testimony by Rhonda and also from the children's counselors that Kelly and Mista are not always reliable witnesses. The record, however, also contains testimony from the victim children regarding the assaults and from the Deputy Sheriff that investigated the allegations against Henderson. When presented with conflicting testimony, the finder of fact–here, the District Court–must determine which to believe. See State v. Lopez, 2001 MT 97, ¶ 26, 305 Mont. 218, ¶ 26, 26 P.3d 745, ¶ 26 (citation omitted). Further, we will not disturb disputed questions of fact and credibility on appeal. See State v. Doyle, 1998 MT 195, ¶ 18, 290 Mont. 287, ¶ 18, 963 P.2d 1255, ¶ 18 (citation omitted). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the misdemeanor assaults beyond a reasonable doubt, and the District Court did so here.

¶14    Henderson also claims that language used by the District Court in the "Reasons for the Sentence"--which followed its findings, verdict, judgment and sentence--that "[t]he recanted testimony of the victim children created more than a reasonable doubt, especially as to the felony," indicates the existence of reasonable doubt as to all of the counts against her.  We disagree.

¶15    As set forth above, the District Court acquitted Henderson of felony criminal endangerment and misdemeanor endangering the welfare of children and convicted her of three counts of misdemeanor assault.  In the context of the record before us, the District Court's statement regarding the children's recanted testimony clearly applies to the felony assault offense and the misdemeanor "endangering" offense of which Henderson was acquitted.  The statement does not apply to the misdemeanor assault charges because the children's statements pertaining to those offenses were consistent in all material aspects  throughout the proceedings.  There simply was no "recanted testimony" with regard to the misdemeanor assaults.

¶16    On this record, we conclude the State proved the offenses of which Henderson was convicted beyond a reasonable doubt.

¶17    2.  Did the District Court err in basing Henderson's conviction solely on unreliable prior inconsistent statements by the children?

¶18    Montana's misdemeanor assault statute, § 45-5-201, MCA, provides in pertinent part:

> (1) A person commits the offense of assault if the person:
> (a) purposely or knowingly causes bodily injury to another;
> . . .
> (c) purposely or knowingly makes physical contact of an insulting or provoking nature with any individual; or
> (d) purposely or knowingly causes reasonable apprehension of bodily injury to another.

The District Court convicted Henderson of three counts of misdemeanor assault for 1) purposely or knowingly causing bodily injury to Kyler when she knocked him down and pulled his hair; 2) purposely or knowingly making contact of an insulting or provoking nature when she spit on Kelly and called her a vulgar name; and 3) purposely or knowingly causing reasonable apprehension of bodily injury to Kelly when she threatened to strike Kelly with a board.

¶19    Henderson argues the District Court's reliance on the children's inconsistent testimony is insufficient to support her assault convictions.  She argues that all of the children's testimony constitutes unreliable prior inconsistent statements and further contends the State failed to corroborate the children's statements by providing evidence of injuries sustained by the children or conducting forensic tests on the physical items introduced into evidence.

¶20    In asserting that all of the children's statements are inconsistent, Henderson fails to distinguish which of the children's statements were made before trial and which of the  statements were given as

testimony at trial. Kyler gave three different statements: his original statement to Deputy Gleich, his subsequent interview with Henderson's counsel, and his testimony at trial. With respect to the misdemeanor assault charges, Kyler's statements that Henderson had knocked him down and pulled his hair, spit on Kelly and called her a vulgar name and threatened Kelly with a board remained unchanged from his original statement to Deputy Gleich through his trial testimony. In this regard, there were no prior inconsistent statements on which the District Court relied.

¶21 With regard to the assault offenses of which Henderson was convicted, Mista and Kelly both stated before trial and testified during trial that Henderson had spit on Kelly, called her a vulgar name and threatened Kelly and Melissa with a board. Clearly, the children's statements and testimony regarding the misdemeanor assaults were not inconsistent and, therefore, the District Court could not have based Henderson's misdemeanor assault convictions solely upon inconsistent statements made by the children.

¶22 Henderson advances State v. Stringer (1995), 271 Mont. 367, 382, 897 P.2d 1063, 1072, in support of her contention that prior inconsistent statements without corroboration are insufficient to sustain a criminal conviction. In that case, a victim of domestic violence and three other witnesses changed their testimony at trial from the statements they gave to police. Stringer, 271 Mont. at 373, 897 P.2d at 1067. We held the evidence was sufficient to withstand a motion for a directed verdict, in spite of the inconsistent statements, because the original statements given at the scene of the assault were corroborated by other evidence. Stringer, 271 Mont. at 382, 897 P.2d at 1072. Stringer is readily distinguishable from the present case. Here, the children did not give prior inconsistent statements relating to the misdemeanor assaults. Thus, pursuant to Stringer, their testimony did not require corroboration. In any event, however, corroborating evidence existed here as it did in Stringer, where we affirmed the district court's denial of a directed verdict. Here, the District Court also received into evidence recorded interviews of Kyler, Kelly and Mista, Deputy Gleich's original report, and a deposition from Mista's counselor.

¶23 We hold the District Court did not err in basing Henderson's assault convictions on the evidence before it.

¶24 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE