No. 03-083

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 13

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MARCUS B. NELSON,

Defendant and Appellant.


APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and for the County of Golden Valley, Cause No. DC-02-01,
The Honorable Randal I. Spaulding, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Torger S. Oaas, Attorney at Law, Lewistown, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Carol E. Schmidt,
Assistant Attorney General, Helena, Montana


Submitted on Briefs:  September 4, 2003

Decided:  January 27, 2004

Filed:


_____
Clerk

Justice John Warner delivered the Opinion of the Court.

## I. INTRODUCTION

¶1      The State of Montana (State) charged Marcus B. Nelson (Nelson) with one count of Driving or in Actual Physical Control While Under the Influence of Alcohol or Drugs, third offense, a misdemeanor, in violation of § 61-8-401, MCA; and with one count of Driving While License Suspended or Revoked, a misdemeanor, in violation of § 61-5-212, MCA, in the District Court for the Fourteenth Judicial District, Golden Valley County.   Nelson filed a Motion to Suppress alleging that the arresting officer had no particularized suspicion to stop his vehicle.   In a supplemental brief, Nelson addressed the applicability to his case of the community caretaker doctrine, recently announced in *State v. Lovegren,* 2002 MT 153, 310 Mont. 358, 51 P.3d 471.  The District Court denied Nelson's Motion to Suppress finding that the officer had a right and a duty to check on the occupant of the vehicle.  Upon denial of his Motion to Suppress, Nelson pled guilty to both counts, reserving the right to appeal. Nelson now appeals the denial of his motion.

¶2      We affirm the District Court.

¶3      The issue on appeal is whether the District Court erred when it denied Nelson's Motion to Suppress.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

¶4      On January 1, 2002, at 6:30 p.m., Montana State Highway Patrolman, Virginia Kinsey, passed a pickup truck that was parked on the highway right-of-way of U.S. Highway 12.  The temperature outside was near zero degrees and the truck's engine was running. Officer Kinsey spotlighted the rear end of the truck as she approached it to get the license

2

plate number. As she passed by the truck, she ran the plate. Officer Kinsey could see no one in the truck as she passed by because there were no lights on inside the vehicle. As she was turning around to return to the truck, she was informed by the dispatch officer that the truck belonged to Nelson. Officer Kinsey believed that Nelson had a suspended license and this was later confirmed by the dispatch officer. When she got back to his vehicle, she went to see if anyone was in it. Nelson was in the driver's seat and appeared to be passed out. When the Sheriff arrived, he and Officer Kinsey approached Nelson. When they got up to the door, Nelson woke up and stared straight ahead. Officer Kinsey opened the door and Nelson appeared confused, his speech was slurred, he had bloodshot eyes, and smelled of alcohol. When asked if he had been drinking, Nelson replied, "Yup," paused, and then said "No." He was unable to walk to Officer Kinsey's car without assistance. He refused to take any field sobriety tests. Officer Kinsey arrested Nelson for DUI and for driving on a suspended license.

## III. STANDARD OF REVIEW

¶5     We review the District Court's conclusions of law for correctness. *Vitullo v. IBEW Local 206*, 2003 MT 219, ¶ 9, 317 Mont. 142, ¶ 9, 75 P.3d 1250, ¶ 9. We review a district court's denial of a motion to suppress to determine whether the court's finding that the officer involved had a particularized suspicion to justify the investigatory stop is clearly erroneous. *State v. Lovegren*, 2002 MT 153, ¶ 9, 310 Mont. 358, ¶ 9, 51 P.3d 471, ¶ 9.

## IV. DISCUSSION

¶6     Police officers have a duty not only to fight crime, but also to investigate uncertain situations in order to ensure the public safety. This community caretaker function of the police is typically the least intrusive form of contact between a police officer and the public.

3

It does not involve detention of a citizen, therefore, it does not involve a seizure. *State v. Lovegren*, 2002 MT 153, ¶ 16, 310 Mont. 358, ¶ 16, 51 P.3d 471, ¶ 16. This Court has recently expounded Montana's version of the community caretaker doctrine in situations where a police officer's investigation of a public safety concern morphs into a seizure or an arrest because of an escalation of events which develop after the initial inquiry. *Lovegren*, 2002 MT 153, 310 Mont. 358, 51 P.3d 471.

¶7 The *Lovegren* test is three-pronged and requires that in order to stop and investigate a situation, an officer must first have objective, specific, and articulable facts upon which to base a suspicion that a citizen is in need of help or is in peril. Once the officer has determined that the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Finally, when the officer is assured that the citizen is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but also those further guarantees afforded by the Montana Constitution. *State v. Lovegren*, 2002 MT 153, ¶ 25, 310 Mont. 358, ¶ 25, 51 P.3d 471, ¶ 25.

¶8 The facts of this case satisfy Montana's test for applicability of the community caretaker doctrine, as set forth in *Lovegren*. Officer Kinsey observed a truck pulled off of a rural highway with its engine running. It was New Year's Day. It was dark outside. The temperature was near zero. Officer Kinsey saw no one in the truck as she passed by the first time, but upon approaching the truck on foot, saw Nelson in the driver's seat. Nelson appeared to be passed out or asleep. When she got to the door, Nelson woke up and stared ahead. He did not acknowledge the officer until she opened the door, at which time she smelled alcohol and observed that Nelson's eyes were blood-shot and he appeared confused.

4

¶9     Under these circumstances, Officer Kinsey was correct to approach Nelson's vehicle to check on his welfare.  Nelson argues that it was really Officer Kinsey's suspicion that his license was suspended that inspired her to return to his truck.   However, Officer Kinsey was already turning around when she was informed that Nelson was the owner of the vehicle.  But even if this were not the case, the primary purpose of her investigation was to determine whether any possible occupants of the vehicle needed assistance.  As in *Lovegren*, Officer Kinsey could have been remiss in her duty had she stopped her inquiry before she determined whether Nelson needed assistance.  Her subsequent observation of Nelson's state of intoxication, including his admission that he had been drinking, was more than enough justification for her to undertake further investigation.

¶10    We affirm the District Court's denial of Nelson's Motion to Suppress.


                                        /S/ JOHN WARNER


We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE

5