JUSTICE RICE
delivered the Opinion of the Court.
¶1 Rebekah Michelle Smith (Smith) appeals from an order of the Fifth Judicial District Court, Beaverhead County, entered on March 28, 2003, denying her motion to suppress evidence obtained after a warrantless search of a home she occupied as a party guest. We reverse.
¶2 The issue on appeal is whether the District Court erred in denying Smith’s motion to suppress.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 In the early morning hours of October 19,2001, Dillon City Police Officer Don Guiberson (Officer Guiberson) and several other officers *468 responded to a complaint about loud noise and the smell of marijuana coming from the apartment of Roslyn Tash (Tash), with whom Officer Guiberson was acquainted. When they arrived at Tash’s apartment, the officers did not notice a marijuana odor. However, they confirmed noise coming from inside the apartment, which sounded like people socializing or having a loud party. The officers knocked on the apartment door, and were given permission to enter by Kenneth Decker (Decker), a twenty-one year old male guest. As the officers entered, Officer Guiberson recognized Tash as the tenant of the apartment. While Tash did not object to the officers’ presence in the apartment, the officers had not requested her permission to enter.
¶4 When the officers arrived at Tash’s apartment, Smith was in the bathroom with the door closed. She was in the process of becoming ill when Tash went in to check on her. Tash later exited the bathroom, pulling the door closed behind her. Shortly thereafter, Officer Guiberson heard vomiting from behind the closed door of the bathroom. Without knocking, Guiberson opened the door and found Smith curled up on the floor, hugging the toilet, with her head in the toilet bowl. Officer Guiberson smelled what he believed was an intoxicating substance, and concluded that Smith was intoxicated. As a result of this encounter, Smith, 18, was charged with possession of an intoxicating substance while under 21 years of age, in violation of § 45-5-624, MCA (2001).
¶5 On November 6, 2001, Smith appeared before the City Court of the City of Dillon and pleaded not guilty to the offense charged. Following a bench trial on March 19, 2002, Smith was found guilty of possessing an intoxicating substance while under 21 years of age and given a deferred sentence. On April 16, 2002, Smith appealed the judgment to the District Court for a trial de novo. She thereafter moved to suppress the evidence obtained as a result of the officers’ warrantless search of Tash’s apartment on October 19, 2001. The District Court denied the motion after a hearing and Smith entered a conditional plea of guilty, reserving her right to appeal from the denial of her motion to suppress. This appeal followed.
STANDARD OF REVIEW
¶6 We review a district court’s denial of a motion to suppress evidence to determine whether the court’s findings of fact are clearly erroneous and whether they are correctly applied as a matter of law. State v. May, 2004 MT 45, ¶ 8, 320 Mont. 116, ¶ 8, 86 P.3d 42, ¶ 8.
*469 DISCUSSION
¶7 Did the District Court err in denying Smith’s motion to suppress?
¶8 Smith challenges the warrantless search of Tash’s apartment on the basis that Decker, who was also a party guest on the evening of October 19, 2001, did not have actual authority to consent to the officers’ entry and subsequent search of the apartment and that Tash’s failure to object to the officers’ presence did not amount to free and voluntary consent. She submits that, in the absence of effective consent, the officers’ search of the apartment was illegal from its inception and all the evidence obtained as a result of the search must be suppressed. The State responds that Smith lacks the requisite standing to contest the officers’ initial entry into the apartment since she was merely a transient party guest on the evening in question and thus had no reasonable expectation of privacy in the common areas within the apartment. We agree.
¶9 The Fourth Amendment to the United States Constitution and Article II, Section 11 of the Montana Constitution protect citizens against unreasonable searches and seizures. The right to be free from unreasonable searches and seizures is augmented by Article II, Section 10 of the Montana Constitution, which reads:
Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.
“When analyzing search and seizure questions that specially implicate the right of privacy under Montana’s Constitution,” Sections 10 and 11 are read together. State v. Boyer, 2002 MT 33, ¶ 19, 308 Mont. 276, ¶ 19, 42 P.3d 771, ¶ 19. An impermissible search and seizure occurs within the meaning of Article II, Section 10 of the Montana Constitution when a reasonable expectation of privacy has been breached. Boyer, ¶ 18. However, where no reasonable expectation of privacy exists, there is neither a “search” nor a “seizure” within the contemplation of Article II, Sections 10 and 11 of the Montana Constitution. Boyer, ¶ 20. Thus, the “capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.” Rakas v. Illinois (1978), 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387.
¶10 Thus, the salient question in this case is whether Smith, as a transient party guest, held a sufficient expectation of privacy in the apartment of Roslyn Tash to contest the legality of the search. See *470 State v. Bowman, 2004 MT 119, ¶ 22, 321 Mont. 176, ¶ 22, 89 P.3d 986, ¶ 22. To determine this question, we consider the following factors: (1) whether Smith had an actual expectation of privacy in the apartment; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the state’s intrusion. Boyer, ¶ 20.
¶11 Unlike Roslyn Tash, the apartment lessee, Smith did not enjoy a property interest in the common areas of the apartment. Nor did she have a right to exclude from the apartment anyone lawfully therein. Rather, Smith’s expectation of privacy in the common parts of the apartment (i.e., kitchen, living room, hallway) was particularly tenuous since Tash, or any other third party possessing common authority over or a sufficient relationship to the premises or effects sought to be inspected, could have validly consented to a police search of those premises or effects. See United States v. Matlock (1974), 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242. Since Tash, by virtue of her property rights, could have consented to a police search of the apartment, Smith cannot claim that she legitimately expected privacy from the police in the common areas of the apartment, and thus seek Fourth Amendment protection.
¶12 However, Smith also challenges the warrantless search on the basis that she possessed a privacy interest in the bathroom of the residence. A substantial line of state cases have recognized that occupants of public restrooms have a reasonable expectation of privacy. Brown v. State (Md. App. 1968), 238 A.2d 147; State v. Bryant (Minn. 1970), 177 N.W.2d 800; Buchanan v. State (Tex. Crim. App. 1971), 471 S.W.2d 401; People v. Mercado (N.Y. 1986), 501 N.E.2d 27; People v. Kalchik (Mich. App. 1987), 407 N.W.2d 627. This is because most people using a public restroom have no reason to suspect a government intrusion. People v. Triggs (Cal. 1973), 506 P.2d 232, 236 (overruled on other grounds). Use of a private bathroom provides similar expectations. By entering the bathroom and closing the door behind her, Smith had a legitimate expectation that her activities would be private and that no unauthorized persons would enter. This expectation was reasonable given the personal and private nature of one’s usual activities within a bathroom. Similarly, we have held that “[p]lacing an object beyond the purview of the public in a place from which the person has the right to exclude others evidences an actual or subjective expectation of privacy.” State v. Elison, 2000 MT 288, ¶ 49, 302 Mont. 228, ¶ 49, 14 P.3d 456, ¶ 49. Under the circumstances of this case, we hold that Smith had a legitimate expectation of privacy *471 while in Tash’s bathroom, and hence may claim the protections of the Fourth Amendment and the Montana Constitution.
¶13 The next question is whether or not the nature of the State’s intrusion was reasonable under the circumstances. See State v. Tackitt, 2003 MT 81, ¶ 17, 315 Mont. 59, ¶ 17, 67 P.3d 295, ¶ 17. The State argues that Officer Guiberson’s entry into the bathroom was justified under the “community caretaker doctrine,” recognized by this Court in State v. Lovegren, 2002 MT 153, ¶ 25, 310 Mont. 358, ¶ 25, 51 P.3d 471, ¶ 25. Smith counters that the circumstances did not give rise to a reasonable belief that she was experiencing a life-threatening illness, or was in need of immediate assistance.
¶14 The community caretaker doctrine stands for the proposition that police officers have a duty not only to fight crime, but also to investigate uncertain situations in order to ensure public safety. State v. Nelson, 2004 MT 13, ¶ 6, 319 Mont. 250, ¶ 6, 84 P.3d 25, ¶ 6. The community caretaker function of the police is typically the least intrusive form of contact between the police and the public. Under the three-pronged test established in Lovegren, an officer may stop and investigate a situation when the officer has objective, specific, and articulable facts upon which to base a suspicion that a citizen is in need of help or is in peril. Once the officer has determined that the citizen is in need of assistance, then the officer may take appropriate action to render aid or mitigate the peril. However, as soon as the officer is assured that the citizen is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but also those further guarantees afforded by the Montana Constitution. Lovegren, ¶ 25; Nelson, ¶ 7.
¶15 While there may be circumstances which would allow an officer to enter a bathroom on the belief that someone is in need of emergency care or assistance, the facts do not warrant such an intrusion in this case. Officer Guiberson and the other officers arrived at Tash’s apartment in response to a noise disturbance complaint. Once on the premises, they observed underage drinking but perceived no threat of danger. Although Officer Guiberson heard vomiting from within the bathroom as he passed by, it was not necessary for him to gain immediate entry into the bathroom in order to investigate the situation further. Rather, Guiberson could have asked the other occupants of the apartment about the situation, or knocked on the bathroom door and inquired. In the absence of objective, specific and articulable facts supporting the conclusion that Smith was in need of *472 officer assistance, we decline to invoke the community caretaker doctrine under these circumstances.
¶16 This conclusion does not, as the dissent suggests, create a “new rule” defining a bathroom as a “bust-free” zone to which partyers can retreat to avoid police contact. We simply hold that the caretaker doctrine - the only rationale in support of police action offered by the State here - did not justify entry into the bathroom and impingement of the defendant’s privacy interests under circumstances which provided alternate means of immediately determining her well-being.
¶17 Because we conclude that Smith held an expectation of privacy in the bathroom of Tash’s apartment and that Officer Guiberson’s entry into the bathroom was not justified by the community caretaker doctrine, we necessarily reverse the District Court’s order denying Smith’s motion to suppress and remand for further proceedings consistent with this opinion.
¶18 Reversed and remanded for further proceedings consistent herewith.
CHIEF JUSTICE GRAY, JUSTICES COTTER, REGNIER, LEAPHART and NELSON concur.