JUSTICE COTTER
delivered the Opinion of the Court.
¶ 1 This is an appeal from a decision of the Sixteenth Judicial District Court, Custer County, permitting evidence, in a forfeiture proceeding, of items found during an execution of a search warrant on Darrell Pelvit’s residence. The search warrant was issued based on evidence seized from a warrantless search of Pelvit’s trash. While the true Appellant is the property forfeited-Pelvit’s truck, boat, and boat trailer-this Opinion will refer to Pelvit as the Appellant for the sake of clarity and brevity.
¶2 The only issue for review is whether the warrantless search of Pelvit’s trash bags violated his right to privacy under Article II, Sections 10 and 11 of the Montana Constitution. The District Court held it did not and therefore denied the Appellant’s motion to suppress. We affirm.
BACKGROUND
¶3 On August 6, 2002, after a several-month investigation of Pelvit, and based on information he was operating a methamphetamine lab, agents of the Eastern Montana Drug Task Force (EMDTF), conducted a warrantless “trash dive” on garbage cans located along a public alley on an open wooden rack behind Pelvit’s residence. EMDTF agents removed an opaque trash bag from one of the unlocked garbage cans and discovered inside it pseudoephedrine boxes with corresponding empty blister packs and empty Naptha cans. Naptha is a solvent known to be used in the manufacture of methamphetamine.
¶4 These items formed the basis for the issuance of a search warrant. The search of Pelvit’s residence, pickup, and boat occurred on August *13 9, 2002. The State thereafter petitioned to institute forfeiture proceedings against Pelvit’s pickup, boat, and boat trailer, because the search turned up drug-related evidence in these places. Pelvit was also charged with federal drug offenses. Pelvit filed a motion seeking to exclude the evidence found during the execution of the search warrant, arguing the warrant was not valid because it was issued based on evidence obtained from an illegal search of his garbage can. After a hearing on May 30, 2003, the District Court denied Pelvit’s motion to suppress the evidence, holding Pelvit did not have a reasonable expectation of privacy in his garbage that society was willing to recognize as reasonable. Pelvit now appeals from this ruling.
STANDARD OF REVIEW
¶5 Athough this is a civil forfeiture proceeding, the evidence in question is subject to the exclusionary rule and can be suppressed if it was obtained through an illegal search. One 1958 Plymouth Sedan v. Pennsylvania (1965), 380 U.S. 693, 698, 85 S.Ct. 1246, 1249, 14 L.Ed.2d 170, 173. We review a district court’s ruling on a motion to suppress to determine whether the district court’s findings of fact are clearly erroneous and whether the court’s interpretation of the law is correct. State v. Romain, 1999 MT 161, ¶ 14, 295 Mont. 152, ¶ 14, 983 P.2d 322, ¶ 14.
DISCUSSION
¶6 Did the District Court err in concluding the warrantless search of Pelvit’s trash bags did not violate his right to privacy under Article II, Sections 10 and 11 of the Montana Constitution, and on that basis denying Pelvit’s motion to suppress?
¶7 Pelvit maintains he exhibited both an objective and subjective expectation of privacy in the contents of his trash, which society is willing to recognize as reasonable. Pelvit claims he took steps to conceal the contents of his trash by putting it in opaque bags in cans located on the rear of his property. He argues a search warrant was required to authorize the search of his trash, and that since one was not obtained, the search was illegal and the items seized should have been suppressed. Pelvit proceeds to argue that the evidence found in his truck and boat should have been suppressed pursuant to the ‘fruit of the poisonous tree” doctrine, because it would not have been discovered but for the unlawful warrantless search of his trash. Pelvit maintains that State v. Siegal, in which we held the warrantless use *14 of thermal imaging violated the defendant’s right to privacy, is controlling. State v. Siegal (1997), 281 Mont. 250, 278, 934 P.2d 176, 192 (overruled in part, State v. Kuneff, 1998 MT 287, ¶ 19, 291 Mont. 474, ¶ 19, 970 P.2d 556, ¶ 19). Pelvit also points to several cases from other state supreme courts in support of his argument.
¶8 The State counters that Pelvit abandoned his trash, and as a result, he had no actual or subjective expectation of privacy in it. In support of this argument, the State points out Pelvit took no steps to secure the trash; rather, he placed it in an unlocked garbage can set out in a public alley for collection. Further, the State asserts society is not willing to recognize Pelvit’s claimed expectation of privacy in his trash as reasonable. The State distinguishes Siegal and cites language from that decision to support its position.
¶9 The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. Montanans have a heightened expectation of privacy, pursuant to the protections found at Article II, Sections 10 and 11 of the Montana Constitution. State v. Scheetz (1997), 286 Mont. 41, 45, 950 P.2d 722, 724. An impermissible search and seizure occurs within the meaning of Article II, Section 10 of the Montana Constitution when a reasonable expectation of privacy has been breached. State v. Smith, 2004 MT 234, ¶ 9, 322 Mont. 466, ¶ 9, 97 P.3d 567, ¶ 9. However, where no reasonable expectation of privacy exists, there is neither a “search” nor a “seizure” within the contemplation of Article II, Sections 10 and 11 of the Montana Constitution. Smith, ¶ 9.
¶10 To determine whether Pelvit had a reasonable expectation of privacy in his trash, we consider: (1) whether he had an actual expectation of privacy in his trash; (2) whether society is willing to recognize that expectation as objectively reasonable; and (3) the nature of the State’s intrusion. Smith, ¶ 10. Analyzing the first two factors, the United States Supreme Court in California v. Greenwood (1998), 486 U.S. 35, 41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30, 37, held the Fourth Amendment does not prohibit a warrantless search and seizure of trash left for collection in an area accessible by the public, reasoning that a person has no reasonable expectation of privacy, which society is willing to recognize, in items knowingly exposed to the public. However, given Montanans’ heightened expectation of privacy pursuant to our Constitution, we will look to our case law in analyzing this inquiry.
¶11 Pelvit maintains that our decision in Siegal is controlling. In Siegal, we were asked to decide whether the warrantless use of a thermal imager by narcotics officers constituted an unconstitutional *15 search. The officers, acting upon information from informants, used the imager to scan buildings located on Siegal’s property to measure the heat emissions coming from them. The officers were particularly interested in a newly constructed building located near Siegal’s residence, and scanned it from a vantage point located on property adjacent to Siegal’s. The building in question was not visible from the road, and the property on which it was located was heavily wooded, completely fenced, and posted with ‘No Trespassing”signs. Siegal, 281 Mont. at 254, 934 P.2d at 178. Upon detecting considerable heat emanating from the building, the officers used the imager results to secure a search warrant, and discovered a marijuana grow operation in the building. Siegal sought suppression of the results of the search on the grounds that the warrantless use of the thermal imager violated his constitutional rights. We agreed with Siegal and reversed his conviction. Siegal, 281 Mont. at 253, 934 P.2d at 178.
¶12 We concluded in Siegal that persons had an actual expectation of privacy in the heat signatures of their activities, intimate or otherwise, that occurred within the confines of their private homes and other enclosed structures that they do not knowingly expose to the public. Siegal, 281 Mont. at 275, 934 P.2d at 191. In so doing, we considered it significant that the defendants had gone to considerable trouble to keep their activities and property away from prying eyes, by fencing and posting their property and keeping their activities within the walls of private enclosed structures. Siegal, 281 Mont. at 273, 934 P.2d at 190. Here, by contrast, while Pelvit placed his garbage in opaque bags, he took no steps to keep it from either the garbage collector or the public at large; in fact, he put it out at the edge of the alley in a location he could neither see from his home or isolate from the populace for the specific purpose of having it collected and taken away by a third party. We therefore do not find Siegal controlling.
¶13 In State v. Hill, 2004 MT 184, 322 Mont. 165, 94 P.3d 752, we held that an unauthorized driver of a rental car had no actual expectation of privacy in two duffel bags found in the trunk of the car because he lacked the “right to exclude others from the trunk of the car.” Hill, ¶ 25. We farther noted that even if Hill had a subjective expectation of privacy, this expectation was not reasonable because he “twice disavowed any interest in the contents of the trunk,” Hill, ¶ 33, and “voluntarily relinquished any control he exercised over the contents of the trunk.” Hill, ¶ 31. Here, Pelvit similarly relinquished mastery over his garbage when he placed it in an area beyond his immediate control for the specific purpose of having a stranger hard it away.
¶14 Voluntary relinquishment of one’s interest in an item or one’s *16 control over that item is akin to the legal concept of abandonment. Abandonment is defined as “[t]he relinquishment of a right; the giving up of something to which one is entitled.” Hawkins v. Mahoney, 1999 MT 296, ¶ 14, 297 Mont. 98, ¶ 14, 990 P.2d 776, ¶ 14 (citing Conway v. Fabian (1939), 108 Mont. 287, 306, 89 P.2d 1022, 1029). We have stated that when a person intentionally abandons his property, that person’s expectation of privacy with regard to that property is abandoned as well. State v. Hamilton, 2003 MT 71, ¶ 26, 314 Mont. 507, ¶ 26, 67 P.3d 871, ¶ 26 (citing State v. Amaya (1987), 227 Mont. 390, 392, 739 P.2d 955, 957). Moreover, as did the United States Supreme Court in Greenwood, this Court has frequently stated that what a person knowingly exposes to the public is not protected by the Montana Constitution. State v. Griffin, 2004 MT 331, ¶ 25, 324 Mont. 143, ¶ 25, 102 P.3d 1206, ¶ 25; State v. Elison, 2000 MT 288, ¶ 49, 302 Mont. 228, ¶ 49, 14 P.3d 456, ¶ 49; Siegal, 281 Mont. at 278, 934 P.2d at 190-91; Scheetz, 286 Mont. at 49, 950 P.2d at 726-27; State v. Bullock (1995), 272 Mont. 361, 375, 901 P.2d 61, 70.
¶15 In determining whether someone has abandoned his property, the intention is the first and paramount inquiry. This intention is ascertained not only from the statements which may have been made by the owner of the property, but also from the acts of the owner. Hawkins, ¶ 14 (citing Conway, 108 Mont. at 306, 89 P.2d at 1029). If no express intent exists, intent may be inferred by the acts of the owner. Hawkins, ¶ 16. Here, because no express intent with respect to his garbage was announced, we are left with Pelvit’s action of placing his garbage in an alleyway for collection. It is impossible to reconcile such an action with Pelvit’s claimed expectation of privacy. In Elison, we spoke in terms of placing an object beyond the purview of the public in a place from which one intends to exclude others. Elison, ¶ 49. Here, by contrast, in leaving his trash for a third party to pick up, Pelvit evidenced the opposite intent-an intent not to exclude others.
¶16 Even if we assume for the sake of argument that Pelvit had an actual expectation of privacy in the garbage he placed for collection, we must still determine whether society would be willing to recognize that expectation as objectively reasonable. Smith, ¶ 10. In analyzing this inquiry, we logically look to society’s experience with respect to garbage placed in an alley for the trash collector. While garbage bags oftentimes remain intact until their contents are collected by a designated hauler, it is also common to see homeless people, stray pets and wildlife, curious children, and scavengers rummaging through trash set out for collection, in hopes of finding food, salvageable scrap, *17 or deserted treasure. See Greenwood, 486 U.S. at 40, 108 S.Ct. at 1628-29, 100 L.Ed.2d at 36-37. The wind and the elements are also factors, particularly in Montana. Routinely, cans are knocked over, bags are exposed to the predations of dogs and raccoons, and garbage is found strewn across streets and alleyways. In short, society s experience with trash left at the alley or curb for collection is anything but consistent with an objective expectation of privacy.
¶17 We conclude that when Pelvit placed his garbage at the alleys edge for collection, he abandoned his garbage; as a result, he had no expectation of privacy in it that society would be willing to accept as reasonable. Absent such a reasonable expectation of privacy, there is neither a “search” or “seizure” within the contemplation of Article II, Sections 10 and 11 of the Montana Constitution. See Smith, ¶ 9. We further conclude that the burden of proving that garbage has been abandoned by the defendant shall be on the State. However, this conclusion does not end our analysis, as this decision will guide the conduct of police in the future, and will also have an impact upon the expectations of a public that is compelled, for lack of easy and lawful alternatives, to use public refuse collection services.
¶18 While we do not believe the public would accept as reasonable an expectation of privacy in abandoned garbage, neither do we believe the public would be entirely comfortable with the image of police officers overtly foraging through curbside garbage. Nor do we believe the public would embrace the idea of police officers conducting random and arbitrary fishing expeditions through garbage cans, in the hopes of finding contraband. Garbage is unique in the sense that, while we may have abandoned it, if we want it hauled away, we are generally obligated to comply with local refuse ordinances by placing it for collection in a particular place. In exchange for such compliance, it seems only fair that certain constraints-inoffensive to legitimate law enforcement interests-should limit the nature and extent of permissible government intrusions into it. Therefore, so as to strike a balance between such public concerns and the needs of law enforcement, we deem it appropriate to qualify our holding. In doing so, we borrow from the analysis of the Indiana Supreme Court set forth in its March 24, 2005, opinion in the case of Litchfield v. State (Ind. 2005), 824 N.E.2d 356.
¶19 [5] In Litchfield, a case similar to the case at bar, the Indiana Supreme Court addressed the reasonableness of a police search of trash recovered from the place where it was left for collection. While the Court upheld the search on abandonment grounds, it concluded that certain limitations should attach to the warrantless seizure of *18 trash. Specifically, the Court imposed two constraints: first, for such a seizure to be reasonable, the garbage must be quickly retrieved by officers ‘in substantially the same manner as the trash collector would take it.” Litchfield, 824 N.E.2d at 363. In other words, officers cannot openly rummage through a person’s garbage at the curb or in the alley, to the embarrassment or indignity of the owner. Second, so as to prevent wholesale or random searches, officers must have an articulable individualized suspicion that a crime is being committed, essentially the same as is required for a ‘Terry stop” of an automobile, in order to justify the garbage seizure. Litchfield, 824 N.E.2d at 364. We conclude that these constraints are reasonable and justified; they balance the State’s interest in conducting a legitimate investigatory search against the public’s expectation that, if they place their garbage for collection as the law requires, curbside chaos will not ensue. We therefore incorporate these limitations into our decision today.
¶20 Here, the search of Pelvit’s trash satisfied both of the constraints we have adopted. The garbage bag was seized and removed from the area before it was searched. Moreover, the record reflects that, based on information that he was operating a methamphetamine lab, Pelvit had been the subject of a several-month investigation prior to the day upon which the search of his garbage was undertaken. We therefore need not remand, as the Indiana Supreme Court did in Litchfield, for a finding of whether the officers possessed reasonable suspicion sufficient to obtain and search Litchfield’s garbage. Litchfield, 824 N.E.2d at 364.
¶21 In conclusion, given the undisputed facts before us, we determine that the State met its burden of proving Pelvit abandoned his trash. We further conclude that the seizure of the garbage was conducted in a reasonable and unobtrusive manner, and that the police had sufficient particularized suspicion to justify the warrantless search of Pelvit’s garbage. Therefore, the District Court did not err in denying Pelvit’s motion to suppress this evidence.
¶22 Finally, we limit this Opinion to the facts presented here. Specifically, we do not encompass within the ambit of our decision garbage located in a yard or other premises that has not been placed for collection, nor do we include any other situation where intent to abandon is not directly or inferentially demonstrated.
¶23 For the foregoing reasons, we affirm.
JUSTICES NELSON, WARNER, RICE and DISTRICT JUDGE SIMONTON, sitting for JUSTICE REGNIER concur.