No. 04-596

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 38

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DONNA WHEELER,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. DDC 2004-035,
The Honorable Dirk M. Sandefur, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jeffry L. Olson, Attorney at Law, Great Falls, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Carol E. Schmidt,
Assistant Attorney General, Helena, Montana

Brant S. Light, County Attorney; Marty Judnich, Deputy County Attorney,
Great Falls, Montana

Submitted on Briefs:  June 15, 2005

Decided:  February 22, 2006

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Donna Wheeler (Wheeler) appeals from an order of the Eighth Judicial District Court, Cascade County, denying her motion to suppress evidence. We affirm.

¶2 We address the following issues on appeal:

¶3 1. Are the District Court's findings of fact concerning why the Sheriff's Deputy approached Wheeler's car clearly erroneous?

¶4 2. Did the District Court err in applying the community caretaker doctrine to deny Wheeler's motion to suppress?

BACKGROUND

¶5 On the evening of June 23, 2003, Cascade County Sheriff's Deputy Tom Dalton (Dalton) observed a car parked in an odd position near an intersection, adjacent to a steep drop off which was protected by a guard rail. There was a stop sign at the intersection. Dalton, an experienced deputy sheriff, had knowledge that other drivers frequently disregarded that stop sign. The car's position gave him concern that it could easily be struck by another vehicle. When driving past the car in question, Dalton observed that a woman in the driver's seat was making hand or arm gestures suggesting to him that she was in an excited, emotional state. He thought the passenger was a man because of that person's short hair. Dalton turned around. He stopped behind the car and walked up to the driver's side to check on the welfare of its occupants. Dalton did not activate his emergency top lights or emergency siren.

¶6 Dalton asked the occupants, who turned out to be Wheeler and her aunt, if everything was okay. When Wheeler responded that everything was okay, her speech was slurred and

Dalton smelled the odor of an alcoholic beverage on her breath. Since Wheeler was in the driver's seat, Dalton conducted a driving under the influence (DUI) investigation and arrested Wheeler for DUI.

¶7 Wheeler was charged with DUI in the Cascade County Justice Court. She filed a motion to suppress all evidence obtained as a result of Dalton's investigation, which motion was denied. Wheeler was found guilty of DUI in Justice Court on December 16, 2003. She appealed the conviction to District Court and again filed a motion to suppress the evidence obtained by Dalton.

¶8 A hearing on Wheeler's motion to suppress was held in District Court on April 22, 2004. At the hearing, the only witness was Deputy Dalton, who testified as to the events of the night in question. The State asked if Dalton was investigating any criminal or traffic violation when he observed Wheeler's car, and Dalton responded that he was not. He testified that he was concerned about the welfare of the car's occupants because of the place where it was parked and the apparent emotional state of the person in the driver's seat.

¶9 On cross-examination, Wheeler's counsel was able to solicit testimony that an incident report filed by Dalton was inconsistent with his testimony at the hearing in several particulars. These inconsistencies concerned the sequence of some of the events, and the timing of some of Dalton's observations. Dalton also admitted that not all of his observations indicated the occupants of Wheeler's car would have been in peril.

¶10 In discussing the incident report, Dalton testified that he attempts to put in these reports pertinent information both so the county attorney can proceed with the case and he can refresh his memory at a later date. Wheeler's counsel then asked Dalton whether it was

3

important that the reports are complete and accurate, and he responded that it was. Dalton later explained that he did not put everything in his reports. On redirect examination, the prosecutor elicited testimony to the effect that it would be fair to say there are small intricacies and specifics of every case that Dalton does not put in his incident reports.

¶11     The District Court denied Wheeler's motion to suppress on April 22, 2004. Wheeler was found guilty of DUI in District Court on June 23, 2004. She appeals her conviction based on the denial of her motion to suppress.

## STANDARD OF REVIEW

¶12     This Court reviews a district court's denial of a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether they are correctly applied as a matter of law. *State v. Smith*, 2004 MT 234, ¶ 6, 322 Mont. 466, ¶ 6, 97 P.3d 567, ¶ 6. A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *State v. DeWitt*, 2004 MT 317, ¶ 21, 324 Mont. 39, ¶ 21, 101 P.3d 277, ¶ 21. This Court reviews a district court's conclusions of law concerning application of the community caretaker doctrine to determine if they are correct. *State v. Seaman*, 2005 MT 307, ¶ 10, 329 Mont. 429, ¶ 10, 124 P.3d 1137, ¶ 10.

## DISCUSSION

### ISSUE ONE

¶13     **Are the District Court's findings of fact concerning why the Sheriff's Deputy approached Wheeler's car clearly erroneous?**

4

¶14 Wheeler disputes Dalton's contention that he was concerned about her car being hit, because no specific traffic complaints had been made regarding the area that evening, and his incident report did not mention such concern. She further argues that the incident report does not correspond with Dalton's testimony regarding exactly when Dalton observed Wheeler appearing to be emotional and when Dalton formed an opinion that the passenger was a male. She finally argues that the District Court erred in finding that the record did not support her contention that Dalton was not really concerned for the safety of the occupants of her car, but rather decided to unlawfully investigate her for no good reason.

¶15 While Dalton's written report did not contain all the information he testified to at the hearing, his explanation that everything he sees does not find its way into his incident report was accepted as true by the District Court. Also, while the incident report's sequence of events did somewhat differ from Dalton's testimony, Dalton gave a credible explanation for these differences. The lack of specific traffic complaints regarding the intersection in question on the night Wheeler was arrested does not prove that Dalton was incorrect in considering the car to be in a position of danger. Dalton based this consideration on his knowledge and experience regarding the intersection in question.

¶16 Since Wheeler provided no evidence gathered by anyone but Dalton, the District Court had to decide whether Dalton was credible even though his testimony was somewhat different from the incident report he filed. As this Court has previously explained:

> The weight of the evidence and the credibility of the witnesses are exclusively within the province of the trier of fact. When the evidence conflicts, the trier of fact determines which to believe.

*State v. Lopez*, 2001 MT 97, ¶ 26, 305 Mont. 218, ¶ 26, 26 P.3d 745, ¶ 26. Given Dalton's

plausible explanation for each of the differences between his incident report and his testimony at the hearing on the motion to suppress, as well as his explanation of any alleged inadequacies in the report, it was not clearly erroneous for the District Court to find as a matter of fact that Dalton's concern for the safety of the occupants of Wheeler's car was what caused him to walk up to it and ask if everything was okay.

## ISSUE TWO

¶17 **Did the District Court err in applying the community caretaker doctrine to deny Wheeler's motion to suppress?**

¶18 The District Court determined that Dalton's investigation of the condition of the occupants of Wheeler's car was lawful based on the community caretaker doctrine. We adopted the community caretaker doctrine in *State v. Lovegren*, recognizing that "[n]ot all contact between police officers and citizens involves the 'seizure' of a person under the Fourth Amendment." *Lovegren*, 2002 MT 153, ¶ 13, 310 Mont. 358, ¶ 13, 51 P.3d 471, ¶ 13. We delineated the elements of the doctrine as follows:

> First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under Article II, Sections 10 and 11 of the Montana Constitution as interpreted in this Court's decisions.

*Lovegren*, ¶ 25.

¶19 In *Lovegren*, an officer came upon a vehicle parked on the side of the highway late at night with its motor running and headlights off. When the officer approached the

vehicle's window, the defendant appeared to be asleep in the driver's seat. After the defendant failed to respond to knocking on the window, the officer opened the door, at which time the defendant awoke and said "I was drinking." The officer smelled alcohol on the defendant's breath, observed the defendant's eyes were bloodshot and eventually charged the defendant with DUI. *Lovegren*, ¶¶ 3-4. In applying the community caretaker doctrine, we determined that the officer had the right to check on the defendant's welfare given the circumstances. *Lovegren*, ¶ 26.

¶20 We applied the *Lovegren* test in *State v. Nelson*, 2004 MT 13, 319 Mont. 250, 84 P.3d 25, where an officer approached a truck parked with its engine running on a highway right-of-way when the temperature was nearly zero degrees. The defendant appeared to be passed out in the driver's seat, but awoke and stared straight ahead when the officer got to the door. When the officer opened the door, the defendant appeared confused, slurred his speech, smelled of alcohol, and had bloodshot eyes. He initially admitted to drinking when asked, and could not walk to the officer's car without assistance. The defendant was arrested for DUI. *Nelson*, ¶ 4. We concluded that the officer was correct to check on the defendant's welfare given the circumstances. *Nelson*, ¶ 9.

¶21 We also applied the *Lovegren* test in *Seaman*, where an officer noticed a car parked on the shoulder of an off-ramp when the temperature was near zero. *Seaman*, ¶ 3. While checking to see if the defendant needed assistance, the officer noted that the defendant had bloodshot and glassy eyes. The officer also heard the defendant slur her speech and could smell alcohol. The officer eventually arrested the defendant for DUI. *Seaman*, ¶¶ 6-7. We concluded that, considering the weather, the remote location, and the car being parked on

the side of the highway for no apparent reason, the officer had valid reasons for determining whether the defendant needed assistance. *Seaman*, ¶ 23.

¶22 Wheeler contends that the first prong of the community caretaker doctrine was not satisfied in this case. She argues that Dalton began his purported welfare check when he initially turned his car around, and at this point Dalton had not observed objective, specific, and articulable facts indicating that Wheeler could easily have been in need of help or in peril. Wheeler further argues that this standard would not be met even considering all facts known to Dalton before he began talking with Wheeler.

¶23 At the time when Dalton first turned his patrol car around, he knew that the car he was about to check on was parked where he had never seen one parked before, the area had a history of numerous traffic complaints, the car was parked so that it could be struck by a speeding vehicle ignoring the stop sign, and the driver appeared emotional.

¶24 Given these facts, we conclude that the District Court did not abuse its discretion in finding that Dalton was justified in stopping to investigate. As in *Lovegren*, *Nelson* and *Seaman*, the car was parked in an unusual location. Dalton's concern that the car's location could result in an accident, given the particular area's traffic history, was reasonable. While neither person in the car appeared to be asleep or passed out, Dalton observed that the driver appeared emotionally excited based on her hand gestures. Dalton reasonably thought she may have needed assistance.

¶25 Considering the circumstances as a whole, the District Court did not abuse its discretion in finding that there existed objective, specific, and articulable facts from which Dalton, an experienced law enforcement officer, would suspect that one or both of the people

8

in the car may have needed help. Thus, the first prong of the community caretaker doctrine is satisfied.

¶26 The second prong of the doctrine does not apply since no one was actually in peril. Under the third prong, Dalton's actions after checking on the occupants constituted a seizure. However, in determining that the occupants were not in peril, Dalton smelled the odor of an alcoholic beverage and heard Wheeler slur her speech. Per *Lovegren*, *Nelson* and *Seaman*, Dalton then had a particularized suspicion for the further investigatory stop that led to Wheeler's arrest for DUI. The District Court did not err in applying the community caretaker doctrine to deny Wheeler's motion to suppress.

CONCLUSION

¶27 The judgment of the District Court of the Eighth Judicial District, Cascade County, is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ BRIAN MORRIS

Justice Patricia O. Cotter dissents.

¶28     I dissent.  I think we have stretched the community caretaker doctrine to the breaking point under the facts presented here.  I would conclude the District Court erred in applying the doctrine in this case.

¶29     As noted by the Court at ¶ 18, our test in *Lovegren* requires "objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or in peril . . . ."  Such facts clearly existed in the three cases cited by the Court.  See *Lovegren* (vehicle parked on the side of the highway at 3:00 a.m. in remote Richland County, with engine running and lights off); *Seaman* (car parked on the shoulder of the off-ramp on the interstate, sub-zero windchills, and a driver outside the car with both passenger doors open); and *Nelson* (car parked at night on the highway, engine running, zero degrees, and no driver visible as the officer passed by).  Here, by contrast, we have a car legally parked on a city street on a summer evening, occupied by a driver and passenger engaged in conversation.  The remoteness, darkness, and/or weather concerns that focused the attentions of both the investigating officers and this Court in the above-cited cases are completely absent.

¶30     The facts with which this officer was presented were neither objectively or specifically sufficient to lead an experienced officer to conclude that these vehicle occupants were in need of help.  Even Dalton conceded as much, when he said that not all of his observations indicated that the occupants of the car were in peril.  Court's Opinion, ¶ 9.  Here there was simply no threat, as there was in the other cases, that, if left alone, Wheeler or her

passenger might come to harm, nor was there any objective indication that either occupant of the car was in need of an officer's assistance.

¶31 Since we first recognized the "community caretaker" doctrine in *Lovegren* in 2002, no fewer than five cases have reached this Court in which the doctrine has been offered as justification for a police investigation. See *Nelson*, *Seaman*, and *State v. Reiner*, 2003 MT 243, 317 Mont. 304, 77 P.3d 210; *State v. Smith*, 2004 MT 234, 322 Mont. 466, 97 P.3d 567; and *State v. Litschauer*, 2005 MT 331, 330 Mont. 22, 126 P.3d 456. There is no way to know how many others were resolved under such grounds but not appealed. It is thus apparent that the doctrine has quickly taken on a life of its own.

¶32 While the public safety function of police investigation is undoubtedly legitimate and important, so too are the privacy rights of persons lawfully occupying vehicles under circumstances that objectively suggest neither peril nor a need for assistance. In concluding that the community caretaker doctrine test was satisfied under the benign conditions presented here, I fear we have lowered the bar for what constitutes an "objective, specific and articulable" circumstance indicating peril, to a level far lower than was intended under the doctrine. Apparently, the District Court thought so too, indicating on the record--before making its findings of fact and conclusions of law--that in its opinion, our cases have already set a threshold that is too low. The court was reluctant to be the arbiter of what the threshold should be, but observed: "If it was up to me to determine what quantum of facts--minimum quantum of facts were sufficient to justify the caretaker stop, it would require something a little more, in my mind."

¶33 I agree with the District Court. More than what we have here should be required. What that "more" is cannot be quantified with exactitude, for each case presents its own unique facts. However, we can and should say what is not enough. I would do so, and would start here; otherwise, I fear that the rule requiring particularized suspicion in police-citizen encounters unless a legitimate community caretaker concern presents itself, will be swallowed by this exception.

¶34 I therefore dissent.

/S/ PATRICIA COTTER

Chief Justice Karla Gray joins in the dissent of Justice Patricia O. Cotter.

/S/ KARLA M. GRAY