

DA 07-0317

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 282

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

ROBERT JONATHAN SHELTON, JR.,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                 In and For the County of Custer, Cause No. DC 06-2
                 Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Jim Wheelis, Chief Appellate Defender, Lisa S. Korchinski,
           Assistant Appellate Defender; Helena, Montana

       For Appellee:

           Hon. Mike McGrath, Montana Attorney General, Tammy K Plubell,
           Assistant Attorney General; Helena, Montana

           Wyatt Glade, Custer County Attorney; Miles City, Montana

                        Submitted on Briefs:  May 21, 2008

                                  Decided:  August 12, 2008

Filed:

                _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Robert Jonathan Shelton, Jr. ("Shelton") was convicted by a jury of operating an unlawful clandestine laboratory. Prior to trial, he moved to suppress evidence gathered from a third party's apartment. Shelton appeals the District Court's order denying his motion to suppress. We affirm.

¶2 We restate the issues as follows:

¶3 I. Did the District Court err in denying Shelton's motion to suppress the evidence collected from the consensual search of a garbage can inside a minor's apartment?

¶4 II. Did the District Court err in concluding that Shelton failed to prove, by a preponderance of the evidence, that the search warrant application contained false information?

## BACKGROUND

¶5 Agent Faycosh, of the Eastern Montana Drug Task Force, discovered a clandestine methamphetamine laboratory at an old rendering plant in Miles City. Based on tips from two of his informants, Agent Faycosh suspected that Shelton produced meth at this clandestine lab. Agent Faycosh went to Terry to interview Shelton. He learned that Shelton had spent the evening of April 11, 2005, at his friend David Johnson's apartment. Faycosh visited Johnson's apartment, and was greeted by Tiny Mae Wood. Wood, seventeen years old, lived in the apartment with Johnson.

¶6 Faycosh requested permission to search the apartment. Wood hesitated, and then confessed that she had cigarettes in her apartment, even though she was under eighteen. Faycosh reassured her that he was not concerned with the cigarettes, but asked her if

there were any illegal drugs in the apartment. Wood said, "No, go ahead and search." Faycosh searched the apartment, and found several items bearing Shelton's name in the garbage can. Faycosh asked Wood if the garbage belonged to Shelton, and she stated that it did. Faycosh asked if it came from Shelton's car, and Wood replied that she thought so. Wood granted Faycosh permission to remove the bag of garbage from the apartment.

¶7 A subsequent search of Shelton's garbage revealed a small plastic baggie that contained marijuana residue and a marijuana seed. Based in part on this evidence, Agent Stratton applied for and received a search warrant to look for evidence in Shelton's car which might connect him to the clandestine meth lab. The search of Shelton's car yielded multiple bags of meth, a digital scale, and a recipe for manufacturing meth.

¶8 Shelton was charged with operating a clandestine laboratory. He moved to suppress the evidence gathered from his car and Wood's apartment, arguing that as a minor, she lacked the capacity to consent to the search. He also argued that the search warrant application contained false information, namely, that it failed to disclose that Woods was a minor, and that it misrepresented Wood's statements regarding the origin and ownership of the trash. The District Court denied Shelton's motion to suppress, and held that Shelton had failed to prove that the application contained false information.

## STANDARD OF REVIEW

¶9 We review a district court's denial of a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court applied the law correctly. *State v. Morse*, 2006 MT 54, ¶ 12, 331 Mont. 300, ¶ 12, 132 P.3d 528, ¶ 12.

3

**DISCUSSION**

¶10 **I. Did the District Court err in denying Shelton's motion to suppress the evidence collected from the consensual search of a garbage can inside a minor's apartment?**

¶11 Shelton contends that Woods lacked capacity to consent to the search of the apartment she shared with Johnson because she was a minor. Shelton seeks to suppress the evidence of illegal drugs seized from her house. Absent this evidence, Shelton argues, the State lacked probable cause to obtain a search warrant of his car.

¶12 The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. *State v. 1993 Chevrolet Pickup*, 2005 MT 180, ¶ 9, 328 Mont. 10, ¶ 9, 116 P.3d 800, ¶ 9. Article II, Sections 10 and 11 of the Montana Constitution provide Montana citizens with a heightened expectation of privacy. *1993 Chevrolet Pickup*, ¶ 9. A search and seizure is unreasonable within the meaning of Article II, Section 10 of the Montana Constitution when a reasonable expectation of privacy has been breached. *1993 Chevrolet Pickup*, ¶ 9. Where no reasonable expectation of privacy exists, there is neither a "search" nor a "seizure" within the contemplation of Article II, Sections 10 and 11 of the Montana Constitution. *1993 Chevrolet Pickup*, ¶ 9. Thus, a person may invoke the protections of these constitutional provisions only if he or she "has a legitimate expectation of privacy in the invaded place." *State v. Smith*, 2004 MT 234, ¶ 9, 322 Mont. 466, ¶ 9, 97 P.3d 567, ¶ 9 (citation and internal quotation marks omitted).

4

¶13　Our threshold concern, then, is whether Shelton has standing to contest the search – i.e., whether he had a reasonable expectation of privacy in the trash he left in Wood's garbage can.　To determine this, we consider three factors: 1) whether Shelton had an actual expectation of privacy in either the premises or the property, 2) whether society is willing to recognize that expectation as objectively reasonable, and 3) the nature of the state's intrusion.　*Smith*, ¶ 10.

¶14　Here, Shelton's claim fails because he had no actual expectation of privacy in either the premises or the property.　Shelton left a bag of rubbish in a garbage can in the apartment shared by Wood and Johnson.　Shelton was a temporary guest on the premises for a few hours that night, and as such, did not enjoy any property interest in the common areas of the apartment.　*Smith*, ¶ 11.　We have recognized that guests may enjoy some expectation of privacy in another's apartment under certain circumstances - for example, if they are using the bathroom.　*Smith*, ¶ 12.　Heightened expectations of privacy may also be accorded to overnight guests.　*See e.g. Minnesota v. Olson*, 495 U.S. 91, 110 S. Ct. 1684 (1990).　Shelton, however, failed to present any evidence to the District Court which would support such a heightened expectation of privacy.　Thus, we conclude that as an ordinary guest of Wood and Johnson, Shelton has failed to show that he had an actual expectation of privacy in the premises.

¶15　Nor may Shelton claim an actual expectation of privacy in the property.　At times, an expectation of privacy may arise from the property itself - for example, as in a bailor-bailee relationship.　Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* vol. 6, § 11.3(c), 169 (4th ed., West 2004) (noting that "there is standing

5

pursuant to a bailment arrangement because the bailor has sought to maintain the security and privacy of his possession in a place he regarded as a safe place for storage.") (citation and internal quotation marks omitted). Shelton, however, produced no evidence to suggest that he had entrusted the bag of trash to Wood for safekeeping.

¶16 Generally, one has little or no expectation of privacy in garbage, especially if it is deemed to have been abandoned. *See e.g.* LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* vol. 1, § 2.6(c), 689-702. Had Shelton left the marijuana seed and residue in his own garbage can inside his own apartment, he might have a stronger case. *See e.g. 1993 Chevrolet Pickup*, ¶ 12 (suggesting that garbage inside one's home would enjoy greater privacy protection than that left outside on the curb, exposed to the public). Shelton, however, discarded the bag in a garbage can in his friend's apartment. Absent any evidence that he intended to return for the bag of trash, we may presume that Shelton abandoned the trash. *1993 Chevrolet Pickup*, ¶ 15 (noting that in the absence of "express intent," abandonment of property may be inferred from a person's actions alone). Wood, Johnson, or any other number of persons could have rifled through that garbage. *See e.g. 1993 Chevrolet Pickup*, ¶ 16. Shelton relinquished control over the garbage when he left Wood's apartment. When "a person intentionally abandons his property, that person's expectation of privacy with regard to that property is abandoned as well." *1993 Chevrolet Pickup*, ¶ 14. Shelton has no reasonable expectation of privacy in a bag of trash that he abandoned.

¶17 Since Shelton had failed to show that he had an actual expectation of privacy in either the property or the premises, we need not reach the other two prongs of the test.

**¶18  II. Did the District Court err in concluding that Shelton failed to prove, by a preponderance of the evidence, that the search warrant application contained false information?**

¶19  Shelton argues that the search warrant application was flawed because it failed to disclose that Wood was a minor. Since Shelton lacks standing to challenge the search of Wood's apartment, as discussed above, Wood's age is irrelevant.

¶20  Shelton also claims that the application contained false information because, he argues, it mischaracterized Wood's responses to Agent Faycosh's questions. The search warrant application stated: "During conversations with Wood, Wood identified a bag of trash in the apartment that belonged to Shelton. Wood further identified the trash as being trash from Shelton's vehicle." Shelton contrasts this with a report authored by Agent Faycosh which stated:

> RAC Faycosh examined a couple items out of the trash that appeared to contain Robert Shelton's name and identifiers. RAC Faycosh asked Ms. Wood if this was Shelton's garbage and she stated yes that it was. RAC Faycosh asked if it came from his vehicle and Ms. Wood said she thought so.

Shelton places great emphasis on the fact that Wood said "she *thought* so," and argues that the search warrant overstated the certainty of the ownership and origin of the trash.

¶21  When, as here, a defendant challenges the veracity of a search warrant application, he or she must make a preliminary showing that the information contained in the application was untrue. *State v. Gray*, 2001 MT 250, ¶ 24, 307 Mont. 124, ¶ 24, 38 P.3d 775, ¶ 24. If the defendant succeeds in making this initial showing, then a preliminary hearing must be held. At this hearing the defendant must prove, by a preponderance of

the evidence, that the information is false. *Gray*, ¶ 24. If proven false, the information must be excised from the warrant, and the court must determine whether sufficient probable cause existed to support the warrant absent the excised information. *Gray*, ¶ 24.

¶22 Here, the District Court found that Shelton made the required preliminary showing, and granted him the opportunity to prove that the application contained false information at a hearing. At the conclusion of the hearing, the District Court found that Shelton failed to prove that the information included in the search warrant application was untrue, and denied his motion to suppress. We agree: Shelton must point to more than a difference in semantics in order to prove, by a preponderance of the evidence, that the search warrant application contained false information.

**CONCLUSION**

¶23 Shelton lacks standing to challenge the search of the apartment, because he had no legitimate expectation of privacy in either the property or the premises. Shelton also failed to prove by a preponderance of the evidence that the application for the search warrant contained false information. Thus, we affirm the District Court's order denying his motion to suppress.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER