Chief Justice Mike McGrath delivered the Opinion of the Court.
***281 ¶1 Christon Dorothy Grmoljez appeals from an order of the Fourth Judicial District Court, Mineral County, denying her motion to suppress. We affirm.
¶2 We restate the issue on appeal as follows:
Whether the District Court erred when it denied Grmoljez's motion to suppress.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 On May 21, 2017, Trooper Stephen Gaston (Trooper Gaston) was patrolling Highway 135, a two-lane highway that runs between St. Regis, Montana, and Highway 200 at Ravalli, Montana-an area he has patrolled for nearly nineteen years. Between 9:30 and 10:00 a.m., Trooper Gaston was travelling southbound toward St. Regis when he noticed a vehicle parked in a gravel turnout. Although the vehicle was safely off the road, it was parked partially in the grassy area beyond the gravel. Trooper Gaston reasoned that the vehicle's location was "consistent with someone who's lost power or run out of fuel, and [had] been unable to go ahead and hit the brakes earlier in the gravel pit." Trooper Gaston knew that this particular turnout did not have access to hiking trails and it was not a scenic turnout "where people stopped to go enjoy the views." As Trooper Gaston drove past the vehicle, he noted that the vehicle had two occupants, and the female driver looked at him "without any emotions." Trooper Gaston observed no obvious signs of mechanical distress with the vehicle.
¶4 Concerned about whether "there was a mechanical issue [or] if they had run out fuel," Trooper Gaston traveled about a half-mile to a scenic outlook, turned around, and returned to the vehicle. Trooper Gaston pulled in behind the vehicle with his rear deck lights on and informed dispatch he was approaching an "occupied vehicle that's possibly disabled." Trooper Gaston exited his patrol vehicle, approached the driver's side of the vehicle, and motioned for the driver to roll down her window. When the driver rolled the window down Trooper Gaston asked, "Everything OK?" The driver, later identified ***282 as Grmoljez, replied, "Yeah ... um ... had too many last night, didn't want to drive, so, pulled over." Trooper Gaston testified that as he spoke with Grmoljez he detected an odor of alcohol. At this point, Trooper *804 Gaston testified, the interaction ripened into a DUI investigation. Trooper Gaston asked Grmoljez to step out of the vehicle, conducted a field sobriety test, and Grmoljez agreed to provide a breath sample. The breath sample indicated a blood alcohol concentration of 0.154, above the legal limit in Montana.
¶5 The State charged Grmoljez with DUI per se in violation of § 61-8-406(1)(a), MCA. In Justice Court, Grmoljez filed a motion to suppress arguing the first prong of the community caretaker doctrine could not be met. When the Justice Court denied the motion, Grmoljez pleaded guilty pursuant to a plea agreement but retained her right to appeal the Justice Court's decision to the District Court. Grmoljez appealed to the District Court. An evidentiary hearing was held in which Trooper Gaston testified and the dashcam video capturing the interaction was admitted into evidence. The District Court denied the motion to suppress. Grmoljez now appeals.
STANDARD OF REVIEW
¶6 In reviewing a district court's ruling on a motion to suppress evidence or statements, we determine whether the court's underlying factual findings are clearly erroneous and whether the court correctly interpreted and applied the governing law. State v. Nelson, 2004 MT 13, ¶ 5, 319 Mont. 250, 84 P.3d 25. A trial court's findings are clearly erroneous if not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if this Court's review of the record leaves us with the firm conviction that a mistake has been made. State v. Clayton , 2002 MT 67, ¶ 8, 309 Mont. 215, 45 P.3d 30. We review cases that originate in justice court and are appealed to district court as if the appeal was originally filed in this Court. State v. Marcial , 2013 MT 242, ¶ 10, 371 Mont. 348, 308 P.3d 69.
DISCUSSION
¶7 Whether the District Court erred when it denied Grmoljez's motion to suppress.
¶8 Grmoljez asserts that her Fourth Amendment right to be free from unreasonable searches and seizures was violated when Trooper Gaston, after noticing her vehicle parked on the side of the road, stopped to see if she needed assistance. We disagree.
¶9 The Fourth Amendment of the United States Constitution, ***283 and Article II, Section 11, of the Montana Constitution, similarly proscribe unreasonable searches and seizures. U.S. Const. amend. IV ; Mont. Const. art. II, § 11. Absent a few carefully drawn exceptions, warrantless seizures of persons are per se unreasonable under the Fourth Amendment and Article II, Section 11, of the Montana Constitution. City of Missoula v. Kroschel , 2018 MT 142, ¶ 10, 391 Mont. 457, 419 P.3d 1208 ; Katz v. United States , 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One such exception, the community caretaker doctrine, is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Lovegren , 2002 MT 153, ¶ 17, 310 Mont. 358, 51 P.3d 471. Instead, the doctrine allows peace officers to take appropriate action when they believe a citizen is in peril. Community caretaker functions vary, but often include assisting motorists who are stranded, involved in accidents, or otherwise in need of help. Marcial , ¶ 13. In Lovegren , this Court adopted a three-part test to ensure application of the community caretaker doctrine comports with constitutional protections and is not used merely as a pretext for illegal searches and seizures. State v. Spaulding , 2011 MT 204, ¶ 24, 361 Mont. 445, 259 P.3d 793. First, as long as there are objective, specific, and articulable facts from which an experienced officer would suspect that a citizen is in need of help, that officer has the right to stop and investigate. Second, if the citizen is in need of aid, the officer may take appropriate action to render assistance or mitigate the peril. Third, once the officer is assured that the citizen is no longer in peril, or that the peril has been mitigated, any action beyond that constitutes a seizure implicating the Fourth Amendment and Article II, Section 11 of the Montana Constitution. Lovegren , ¶ 25.
¶10 Grmoljez argues the first prong of the Lovegren test cannot be met because Trooper Gaston did not rely on objective, specific, and articulable facts to support his suspicion that Grmoljez was in peril. Grmoljez reasons, *805 "a car legally parked in a safe turnout, during the spring with no adverse weather, at a normal time of day, with visual confirmation that the driver is not in distress does not support a community caretaker stop." This oversimplification of the interaction undermines the doctrine's express grant allowing experienced officers to draw informed conclusions. Trooper Gaston drew from his nineteen years of experience patrolling the area to conclude that Grmoljez was not stopped to enjoy the view-there were scenic lookouts close by and her vehicle was parked facing the hill; she was not stopped to hike-the turnout offered no access to hiking trails; and the positioning of her car was consistent with someone who had suddenly lost power ***284 or ran out of gas. Based on these objective, specific, and articulable facts, it was reasonable for Trooper Gaston to conclude that Grmoljez needed assistance.
¶11 Grmoljez asserts that when she looked at Trooper Gaston "without any emotions" he received visual confirmation that she was not in distress, thus obviating any need for him to conduct a welfare check. We rejected this argument in Spaulding . In that case, the defendant urged that because she did not turn on her emergency flashers, flag down the officer, or exhibit an "emotionally excited appearance" the welfare stop was unjustified. Spaulding , ¶ 28. This Court explained: "the absence of such circumstances, while relevant, does not negate the objective, specific, and articulable facts which did exist ...." Spaulding , ¶ 28. This holding similarly subverts Grmoljez's argument that because the welfare check occurred on a warm day during daylight hours, the District Court's decision was inconsistent with other cases applying the doctrine. Indeed, the officers in both Spaulding and Nelson relied partially on freezing temperatures and early morning hours to support their belief that the defendants needed help. Spaulding , ¶ 25 ; Nelson , ¶ 8. However, "[e]ach community caretaker case turns on its discrete facts. That a particular case is not, factually, a cookie-cutter copy of another simply proves this point." Spaulding , ¶ 29. In determining whether the first prong of the Lovegren test was met, the District Court correctly relied on the objective, specific, and articulable facts supporting Trooper Gaston's conclusions instead of focusing on the absence of facts, such as inclement weather or darkness. Although there were no definitive signs of mechanical distress, the encounter occurred in the daylight, and the temperatures were above freezing, Trooper Gaston provided objective, specific, and articulable facts supporting his concern that Grmoljez could have been in need of help.
¶12 The interaction between Grmoljez and Trooper Gaston conforms with this Court's warning that "the community caretaker doctrine cannot be used as a pretext for an illegal search and seizure, and the stop must actually involve a 'welfare' check." Marcial , ¶ 13. Trooper Gaston's testimony, along with the dashcam footage, establish that his intent in approaching the vehicle was simply to determine if Grmoljez needed assistance. Specifically, his observations leading up to the encounter only support his belief that Grmoljez needed help. Absent from Trooper Gaston's testimony were any observations of possible criminal activity, thus negating the suggestion that the stop was pretextual. Further, Trooper Gaston's overall manner as he ***285 approached Grmoljez was consistent with a welfare check. He pulled behind Grmoljez's vehicle, activated only his rear deck lights, and informed dispatch he was approaching an "occupied vehicle that's possibly disabled." Instead of immediately demanding Grmoljez's identification, Trooper Gaston asked, "Everything OK?" Grmoljez has failed to present evidence demonstrating the encounter did not actually involve a welfare check. Beyond that, this Court has continuously recognized the community caretaker role as an affirmative duty of peace officers. State v. Seaman , 2005 MT 307, ¶ 15, 329 Mont. 429, 124 P.3d 1137 ; Marcial , ¶ 13 ; Lovegren , ¶ 26. Under these circumstances, it may have been a dereliction of duty for Trooper Gaston not to stop and investigate an uncertain situation involving a motorist possibly in need of help. Spaulding , ¶ 25.
¶13 The District Court did not err when it denied Grmoljez's motion to suppress. While the contact began as a welfare check, it shifted to a DUI investigation only after additional information became available to Trooper Gaston. When Trooper Gaston *806 learned that Grmoljez had been drinking heavily the night before and detected the smell of alcohol his focus switched from Grmoljez's welfare to a criminal investigation supported by particularized suspicion. Marcial , ¶ 8.
CONCLUSION
¶14 The welfare check meets the first prong of the Lovegren test and, for this reason, the District Court properly denied Grmoljez's motion to suppress.
¶15 Affirmed.
We Concur:
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.